AO 91 (Rev. 11/11) Criminal Complaint

DOA
03/25/25

# UNITED STATES DISTRICT COURT
for the
District of Arizona

United States of America
v.

1. Martin Guadalupe Enriquez-Meza; and

2. Steven McCall

*Defendants*

Case No. 25-9159 MJ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

On or about March 25, 2025, in Maricopa County, within the District of Arizona, the defendants, Martin Guadalupe Enriquez-Meza and Steven McCall, did knowingly and intentionally combine, conspire, confederate and agree together and with others known and unknown to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846.

### COUNT TWO

On or about March 25, 2025, in Maricopa County, within the District of Arizona, the defendant, Martin Guadalupe Enriquez-Meza did knowingly and intentionally distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers, a Schedule II controlled substance (to wit: a mixture of methamphetamine found in a Ford F-150 operated by Steven McCall), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

### COUNT THREE

On or about March 25, 2025, in Maricopa County, within the District of Arizona, the defendant, Martin Guadalupe Enriquez-Meza did knowingly and intentionally possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers, a Schedule II controlled substance (to wit: a mixture of methamphetamine found in an apartment located at 2540 W. Maryland Avenue, in Phoenix, Arizona), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

**COUNT FOUR**

On or about March 25, 2025, in Maricopa County, within the District of Arizona, the defendant, Steven McCall did knowingly and intentionally possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers or salts of its isomers, a Schedule II controlled substance (to wit: a mixture of methamphetamine found in a Ford F-150 operated by Steven McCall), in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii).

This criminal complaint is based on these facts:

See Attached Statement of Probable Cause, Incorporated by Reference Herein

☒ Continued on the attached sheet.

JACQUELYN CZOPEK Digitally signed by JACQUELYN CZOPEK Date: 2025.03.26 17:29:21 -07'

*Complainant's signature*

Digitally signed by DAVID CONTI Date: 2025.03.26 17:31:32 -07'00'

Reviewed by AUSA D. Matthew Conti

Special Agent Jacquelyn K. Czopek
Drug Enforcement Administration

*Printed name and title*

Sworn telephonically and signed electronically.

Date: 3/26/2025@9:23pm

ESWillett

*Judge's signature*

City and state: Phoenix, Arizona

Honorable Eileen S. Willett, U.S. Magistrate Judge

*Printed name and title*

## STATEMENT OF PROBABLE CAUSE

I, Jacquelyn K. Czopek, Special Agent of the Drug Enforcement Administration, being duly sworn, declare and state as follows:

## INTRODUCTION AND BACKGROUND OF AFFIANT

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a Special Agent with the United States Drug Enforcement Administration (DEA). I have been so employed since October 2010. I am a law enforcement officer of the United States and is empowered by law to conduct investigations, make arrests, and execute search warrants. I am currently assigned to the DEA Phoenix, Arizona Field Division, Strike Force. Strike Force conducts narcotics investigations into International Drug Trafficking Organizations (DTOs) and specializes in the detection, penetration, and dismantlement of these organizations, often coordinated with the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), United States Postal Inspectors, and state/local law enforcement personnel designated as Task Force Officers (TFOs). I am also a cross-certified Federal Peace Officer with the Maricopa County Sheriff's Office, in accordance with A.R.S. § 13-3875, and may exercise all law enforcement powers of an Arizona Peace Officer.

3. I have a Bachelor's of Science (B.S.) degree in Psychology from Augustana College in Rock Island, Illinois, and a Master's Degree in Criminal Justice from Lewis University in Romeoville, Illinois. I have completed the Drug Enforcement Administration's Basic Agent Training. The curriculum for the nineteen-week course includes federal law regarding drug-related offenses and criminal investigations, drug identification, physical surveillance, undercover negotiations, and electronic surveillance.

4. By virtue of my employment as a Special Agent, I have performed various tasks, which include; investigations into the distribution of marijuana, methamphetamine, heroin, cocaine, fentanyl, Oxycodone, Hydrocodone, Alprazolam (Xanax), as well as the manufacture of methamphetamine and anabolic steroids. I have participated in both physical and electronic surveillance, which has led to or assisted in the seizure of United States Currency (USC), distributable amounts of marijuana, heroin, cocaine, methamphetamine, Oxycodone, Hydrocodone, Tramadol, fentanyl, Promethazine with Codeine, anabolic steroids, chemical precursors, as well as drug ledgers, drug-related paraphernalia and other documents and records used to facilitate the activities of DTOs.

5. I have participated in many aspects of drug investigations, including the execution of multiple search warrants, Grand Jury subpoenas, and ex parte orders for evidence of drug-related offenses, including narcotics, drug-related ledgers, paraphernalia, records, and evidence of money laundering crimes through the placement and layering of large amounts of USC.

6. In the course of conducting drug investigations, I have personally interviewed confidential informants (CIs), cooperating defendants (CDs), sources of information (SOIs) and/or persons involved in the distribution of illegal and diverted drugs and the movement of proceeds from illegal drugs. I have also been an affiant for cellular telephone tracking orders, mobile trafficking devices (MTDs), search warrants, seizure warrants, and federal complaints.

7. In preparing this Affidavit, I conferred with other law enforcement officials, who share the opinions and conclusions stated herein. I have personal knowledge of the following facts or have learned them from other law enforcement officers. I have also relied on my training, experience, and background in law enforcement to evaluate this information. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for a complaint, I have not included each and every fact or source of information establishing the violation of federal law.

**PROBABLE CAUSE**

8. On March 25, 2025, DEA investigators were surveilling the residence located at 2540 W. Maryland Avenue, Apartment 135, Phoenix, AZ ("Maryland Residence"). Based on my investigation, I believe Martin Guadalupe ENRIQUEZ-Meza ("ENRIQUEZ") and a female acquaintance of ENRIQUEZ reside at the Maryland Residence. At approximately 4:57 p.m., I observed ENRIQUEZ exit the Maryland Residence carrying a red box and was accompanied by his acquaintance. ENRIQUEZ and his acquaintance entered a green Toyota Tacoma ("Tacoma") that was parked in front of the Maryland Residence. At this time, ENRIQUEZ entered the driver's seat while holding the red box and the acquaintance entered the passenger's seat. The Tacoma left the Maryland Residence and investigators followed the Tacoma to the Food City shopping center located at the intersection of 27th Avenue and Bethany Home Rd. After arriving in the parking lot, investigators observed the Tacoma parked in close proximity to a blue Ford F-150 ("F-150") which was seen to be occupied by a white male. Investigators observed the driver of the F-150, later identified as Steven MCCALL ("MCCALL"), motion with his hand to ENRIQUEZ to follow him. The F-150 began to depart the shopping center parking lot and the Tacoma followed in tandem.

9. Investigators followed the F-150 and Tacoma to the area of 29th Ave. and Rovey Ave., a residential street close to the Food City. Investigators observed the vehicles parked on the side of Rovey Ave. and ENRIQUEZ was observed exiting the Tacoma while carrying the red box. ENRIQUEZ walked to the driver's door of the F-150 and appeared to be speaking with the driver (MCCALL). After a brief meeting, investigators observed ENRIQUEZ return to the Tacoma empty-handed. The F-150 and Tacoma then departed in opposite directions and investigators continued surveillance of the F-150.

10. At approximately 5:07 p.m., Scottsdale Police Department (SPD) Detective Anthony Morse initiated a traffic stop of the F-150 for a speeding violation near the intersection of 39rd Ave. and Bethany Home Rd. in Phoenix, AZ. After the F-150 maintained its high speed for a brief amount of time, it ultimately pulled over in a gas

station near the intersection of 43rd Ave. and Bethany Home Rd. As Detective Morse approached the F-150, he was met by the driver, identified as MCCALL, who exited the F-150 and was standing outside of the vehicle. Detective Morse informed MCCALL that he had stopped him due to his speed, having been traveling at 50 mph in a 40-mph speed zone. After speaking with MCCALL, Detective Morse explained to MCCALL that investigators had also observed him receive the red box and asked what was in it, asking if it could be fentanyl. MCCALL initially claimed to not know what was in the box. Later in the conversation, MCCALL said it wouldn't be fentanyl because he didn't mess with fentanyl. MCCALL later said it would most likely be methamphetamine. Detective Morse continued to speak with MCCALL and asked if he would consent to a search of the F-150. MCCALL refused consent. Within minutes, a Maricopa County Sheriff's Deputy K-9 officer arrived on the scene and conducted an exterior sniff of the F-150 with his canine. At this time, the doors of the F-150 were open and the canine positively alerted to passenger side floorboard where the red box was located. Following the alert, the red box was searched, and investigators found four round packages containing a crystalline substance consistent with methamphetamine and weighing 1.3 kilograms. MCCALL was placed under arrest at this time and transported to the DEA office for processing.

11. While the F-150 was stopped, investigators located the Tacoma at the Maryland Residence unoccupied and reestablished surveillance. At approximately 5:13 p.m., I observed ENRIQUEZ and his acquaintance exit the Maryland Residence and enter a maroon colored Kia Forte ("Forte") that was parked in front of the Maryland Residence. As the Forte left the residence, investigators followed ENRIQUEZ and his acquaintance to a Circle K gas station in the area of 27th Avenue and Deer Valley Rd. in Phoenix, Arizona. At approximately 5:30 p.m., investigators observed ENRIQUEZ walk from the gas pump where the Forte was parked and into a car wash bay out of sight. Several minutes later, investigators observed a dark colored SUV depart the carwash bay as ENRIQUEZ walked back to the Forte. The Forte left the parking lot and traveled towards the direction of the Maryland Residence.

12. At approximately 5:55 p.m., the Forte returned to the Maryland Residence. As ENRIQUEZ and his acquaintance exited the Forte, investigators approached the Forte and identified themselves as law enforcement. ENRIQUEZ attempted to flee on foot towards the Maryland Residence, but was quickly detained. While speaking with a Spanish speaking investigator, ENRIQUEZ confirmed that he resides in the Maryland Residence. ENRIQUEZ was asked if there were firearms or any other illicit items in the Maryland Residence, and ENRIQUEZ said that there was a box in the apartment, but he did not know what was in the box. Investigators asked ENRIQUEZ if he would provide consent to search the Maryland Residence, to which he agreed, and later signed a written consent form stating that he was on the lease for the Maryland Residence.

13. During a search of a Maryland Residence, specifically in the sole bedroom, investigators located a large box of round packages containing a clear crystalline substance weighing 19.96 kilograms that were the same shape and size of those discovered in the F-150 MCCALL was driving. A box containing a white powdery substance weighing 3.3 kilograms was also located in the bedroom. In the closet of the bedroom, investigators located a black plastic bag containing round blue pills marked "M" and "30" consistent with fentanyl weighing 2.17 kilograms and an additional clear bag containing a clear crystalline substance weighing 882.8 grams consistent with methamphetamine. Investigators also located a money counter and undetermined amount of U.S. currency on a large table in bedroom. A subsequent search of the table in which the money was on top of revealed twelve boxes of ammunition. Following the discovery, ENRIQUEZ was placed under arrest and transported to the DEA Office. A search of the black bag that ENRIQUEZ was carrying also revealed an undetermined amount of U.S. Currency. Prior to ENRIQUEZ's arrest, his acquaintance was transported to a hospital due to pains related to her pregnancy and was accompanied by law enforcement.

14. Investigators subsequently tested a sample of the crystalline substance recovered from MCCALL's F-150, which tested positive for the characteristics of methamphetamine. Investigators also field-tested samples of the crystalline substances

found in the Maryland Residence bedroom and the closet. Those samples also tested positive for methamphetamine. The round blue pills found in the bedroom closet were tested via an MX908 and tested positive for PCP. A sample of the pills were also field tested via a fentanyl field test strip and tested positive for fentanyl. The white powdery substance located in the bedroom was not tested due to the significant amount of residue and safety precautions surrounding powder fentanyl, which the substance was suspected to contain.

15. During a post-arrest, post-*Miranda* interview, MCCALL admitted to being directed by an unidentified Hispanic female (UF) to meet with a green truck at the Food City parking lot and follow the driver to a secondary location where MCCALL would pay $1,450 for two pounds of methamphetamine.

16. During a post-arrest, post-*Miranda* interview, ENRIQUEZ claimed that if he provided information to law enforcement about where the drugs came from, he feared his family in Mexico would be in danger.

17. Following ENRIQUEZ's acquaintance's release from the hospital, she was transported to the DEA office by law enforcement. During a post-*Miranda* interview, she said ENRIQUEZ had received the box of the methamphetamine that was located in her bedroom approximately one month prior by an unknown female who appeared to be white. The acquaintance said she had accompanied ENRIQUEZ on multiple drug deliveries, but did not meet the buyers and went along to make ENRIQUEZ feel more comfortable.

/ / /

/ / /

/ / /

18. Based on the facts and circumstances stated in this Affidavit, I submit that there is probable cause to believe that the defendants, Martin Guadalupe Enriquez-Meza and Steven McCall, committed the offenses as alleged in the Complaint.

JACQUELYN CZOPEK Digitally signed by JACQUELYN CZOPEK
Date: 2025.03.26 17:29:54 -07'00'

Jacquelyn K. Czopek
Special Agent
Drug Enforcement Administration

Electronically signed and telephonically sworn this 26 day of March, 2025.

E.S. Willett

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge